Scoeield, J.,
delivered the opinion of the court:
In June, 1846, S. A. Belden, the deceased partner of the claimant firm, accompanied the United States Army into Mexico as a sutler. Afterward, in company with William Ailing, the surviving partner and claimant in this suit, he opened a store at Matamoras, then occupied by our troops, and began trading under the firm-name of S. A. Belden & Co. During ■ the war this firm imported goods into Mexico, from time to time, upon which they paid a duty to the United States of 30 per cent, ad valorem. A treaty of peace was signed February 2, *319 1848, ratified and exchanged May 30,1848, bnt not finally proclaimed till July 4, 1848. By article 19 of the treaty it was stipulated that all merchandise imported into Mexico during the military occupancy by the United States should be exempt from confiscation and charge on sale. In June, 184^, a large amount of leaf tobacco was imported by R. B. Kingsbury. In September following he sold 300 bales to S. A. Belden & Co. As this tobacco was brought in after the ratification of the treaty, and just before the evacuation by the United States forces, its right to exemption was much questioned. Mexico had farmed out to a single company the exclusive right to deal in leaf tobacco, and the interests of the company were jealously watched by many agents. More than a year elapsed before Belden & Co. could obtain the necessary permits to send their tobacco into the interior for sale. When the permits were finally secured, and the tobacco started to market, it was seized and detained at Saltillo by an order from Judge Gomez, obtained upon a complaint made by an agent of the monopoly that the same had been illegally imported. Belden & Co. were twice summoned to appear and defend, but under the belief that a fair hearing would not be accorded them they neglected to respond. Smuggling under the Mexican law was punished by a forfeiture of the goods and a fine of double their value. • A decree was finally made, confiscating the tobacco and imposing a fine of $26,309.12 upon the owners. Execution. with clause of capias for the collection of the fines, ivas served upon Belden March 6, 1850. To avoid arrest he crossed the river to Texas. The stqre of goods at Matamoras was levied upon and sold. Belden & Co. gave no further attention to their affairs in Mexico, but applied to the President and Congress for indemnity and relief. The President referred the matter to the minister at Mexico, and Congress passed the Act February 10, 1855 (10 Stat. L., 847). Under this act Belden & Co. received $18,347.28, and executed the assignment presented in the fifth finding of facts.
The claim was again laid before the United States and Mexican Claims Commission, sitting in Washington under the convention of July 4, 1868. After a long and most laborious consideration of the case, the commission made the order and award set out in full in the sixth finding of facts. The whole allowance on the claim was $53,099.25. The commission also *320 found tliat $35,920.81 of this sum belonged t,o the United States by assignment, and $17,178.44 to Belden & Co. The award was payable in thirteen annual installments. Prior to the inception of this suit five installments, amounting to $19,010.57, have been paid to the Secretary of State. This sum was divided by the Secretary between the United States and Belden & Co. in the proportion of the right of each as set out in the award, to wife, to the United States $12,843.06, and to Belden & Co. $6,167.51. Against this division the claimant protested.
He obtained a rehearing before the Hon. William M. Evarts, when Secretary of State, but the Secretary indorsed the action of his predecessor. Thereupon he brought suit in this court, and now claims that neither the commission nor the Secretary had authority to act in the premises. Granting that claimant’s rights are not concluded by these decisions, it must be conceded that an opinion, arrived at by gentlemen distinguished not only by their high position, but by their ability and probity, entirely disinterested and under the necessity of making a full examination of the facts and the law of the case, is certainly entitled to great consideration.
Going behind the judgment of the commission and the Secretary, we come to the act of Congress under which a part of this claim was assigned to the government. That act diréets the Secretary of the Treasury: First. “ To ascertain the amount of duties paid by Belden & Co. upon merchandise,” of which .“merchandise or the proceeds of sale” they had been deprived by the wrongful act of Mexico. Second. To pay or refund the “ amount thus ascertained” to Belden & Co. Third. To take an “assignment of all their right to the amount so refunded, when recovered from the Government of Mexico.”
Belden & Co represented their loss to be more than $300,000. Congress acted upon that representation. It was doubtless their intention to share that loss to the extent of the duties paid upon the lost property. If thereafter the value of the lost property should be recovered from Mexico, Belden & Co. could have no claim for indemnity or charity upon their own government. In that event they were to pay back the amount refunded, and to secure the repayment by making “ legal assignment to the United States of all their right to the amount so refunded when recovered from the Government of Mexico.”' When what was to be recovered from Mexico ? Duties paid to. *321 the United States'? Certainly not. They had no such item in their claim. The claim was for the value of property taken, not the items which entered into the original cost. It cannot be supposed that Congress expected Mexico to settle by taking the cost of goods in New York, adding transportation, insurance, duties paid the United States, interest on investment, and a precentage for profit. They, of course, understood that the value of the property in the market of Matamoras, not what it might have cost Belden & Co. to place it there, would be the measure of damages. There is some awkardness in the language of the act, occasioned by the necessity of describing at considerable length the mode in which the amount of duties to be refunded to Belden & Co. should be ascertained. But when ascertained and .paid they were required to assign an amount of their claim equal to the “ amount so refunded.” To limit the assignment to a claim for duties paid to the United States would be absurd. If it covered nothing more than that it would be entirely worthless and meaningless; for they never had, and never could have, such a claim. With some reason the law might have limited the assignment to the claim for goods in Matamoras, or for tobacco at Saltillo, or for debts due them in Mexico (for all these were items in the claim), but it did not. It only fixed the amount to. be assigned, and thus made it a lien, not upon any particular item of the claim, but upon any sum recovered.
But it is said that the assignment should at least be limited to damages recovered for merchandise which was lost, either “in the form in which it was imported or in the proceeds of sale.” This language is employed in the law, as before stated, to fix the amount of duties to be refunded, not the security to be given for repayment. But, conceding the construction claimed, was not the tobacco a part of “ the proceeds of sale”? Belden & Oo. did not import it, but bought it at Matamoras in the regular course of trade. It does not appear how it was paid for; but, considering the large amount of merchandise taken to Matamoras, and the small amount, including debts due, found on hand, it is not unreasonable to infer that the tobacco was a part of the “ proceeds of sale” of merchandise.
It is further said that, inasmuch as Belden & Oo. recovered only a small part of their claim, the government ought not, injustice, to retain the whole amount of the refund. It is true *322 that the award was much less than the claim, but, considering tbe high character and disinterestedness of the tribunal by which it was made, it must be held to be equal to the real loss. From a careful examination of the opinions and argument of the commissioners and the evidence before them, it appears, not that the award was too small, but that the claim was too large.
In the construction of the law we concur with the commissioners and the Secretary of State, that the repayment to the United States was to be made from whatever sum might be recovered from Mexico. According to this construction, the fund received in the State Department has been properly divided.
The judgment of the court is that claimant’s petition be dismissed.
Nott, J., was not present at the hearing of this case, and took no part in its decision. .